**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

**vs.**                                               **3:03CR106/RV**
                                                      **3:04CV456/RV/MD**

**MARISA HILARY DYSART**

---

## REPORT AND RECOMMENDATION

      **This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 and supporting memorandum of law (doc. 34). The government has filed a response (doc. 41) and the defendant has filed a reply (doc. 43).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.**

## I.  BACKGROUND

      **Defendant pleaded guilty pursuant to a standard written plea and cooperation agreement (doc. 21) to a single charge of conspiracy to possess with intent to distribute 50 grams or more of a substance containing methamphetamine.[1]  Her base**

---

[1]Although based in the Atlanta area, she was charged in this court because her buyers, Michael and Mary Blackwell, were from Pensacola.

offense level was 34, but she received a three level downward adjustment for acceptance of responsibility and a two level safety valve downward adjustment pursuant to § 5C1.2, for a total offense level of 29. She had no prior criminal history, and the applicable guidelines range was 87 to 108 months.

She was sentenced on January 27, 2004 at the bottom of this range to a term of 87 months imprisonment, followed by four years of supervised release, a $1,000 fine, and a $100 special monetary assessment. She did not appeal. Defendant claims in her memorandum that an appeal was waived pursuant to the plea agreement, but this is factually incorrect as the standard plea and cooperation agreement she signed contains no such provision.

The facts underlying the charged offense conduct are set forth in the PSR and the government's response (doc. 41 at 3-6), and are incorporated by reference herein.

In the present motion, defendant separates her claim into two grounds for relief. She claims that counsel was constitutionally ineffective and that the improper drug amount was used to determine her sentence, although the latter claim is encompassed within her ineffective assistance of counsel claim in her argument.

## II.  LEGAL ANALYSIS

### Ineffective Assistance of Counsel, Legal Standards

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.

*Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11ᵗʰ Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).   In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs.  466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11ᵗʰ Cir. 1992).  "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11ᵗʰ Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11ᵗʰ Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11ᵗʰ Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11ᵗʰ Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*,  466 U.S. at 689, 104 S.Ct. at 2065.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11ᵗʰ Cir. 2001) (emphasis in original).

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but

for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).  Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).  Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

**Defendant's claims**

In this case, defendant raises three areas of counsel's purported ineffectiveness.  First she claims that counsel was ineffective because he failed either to provide her with transcripts of tapes of conversations between defendant and one of her customers or to play the tapes for her.  Defendant maintains that "since the tapes were considered to be some of the strongest evidence against the defendant, this impeeded (sic) her decision on how to best proceed with her case." Her assertion is perplexing, given that even within her memorandum of law she admits her guilt.[2]  Having admitted her guilt, the only logical way to proceed would be to plead guilty in hopes or receiving the benefit of adjustments for acceptance of responsibility and the "safety valve," and possibly being able to cooperate with the government.  A conviction after a jury trial would have left her in a worse position with respect to the Guidelines. Furthermore, as a participant in the conversations memorialized on the tapes, defendant could not plausibly say she was unaware of what was said.  Defendant has not shown that she was prejudiced in any way by counsel's alleged deficiency in this respect, and thus has not proven she is entitled to relief.

Defendant next contends that throughout the case, counsel accepted the government's versions of the facts without conducting any investigation of his own. She claims to have made a list of incorrect information found in the discovery and given it to her attorney, who did not do anything with it.  She also states that there was no attempt made to contact character witnesses which could have been used in her favor.  She does not identify who counsel should have contacted or what their testimony would have been, and in fact does not allege that she identified these individuals to counsel and requested that they be contacted.   She fails to explain how these character witnesses could have helped her case in light of the fact that

---

[2]Counsel also states in his affidavit that the defendant wrote a letter to AUSA Tom Swaim in which she admitted her guilt.

*Case No: 3:03cr106/RV; 3:04cv456/RV/MD*

she entered a guilty plea in the case, and was sentenced at the bottom of the applicable sentencing guidelines range.  Furthermore, defendant does not suggest any other investigation that counsel could or should have done, or how that might have affected her case.  No absolute duty exists to investigate particular facts or a certain line of defense. Under *Strickland*, counsel's conducting or not conducting an investigation need only be reasonable to fall within the wide range of competent assistance. 104 S.Ct. at 2066 (stating that counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary") (cited in *Chandler v. United States*, 218 F.3d 1305, 1317 (11th Cir. 2000)).  And even if investigation is warranted, counsel is not required to "pursue every path until it bears fruit or until all hope withers."  *Williams v. Head,* 185 F.3d 1223, 1236-37 (11th Cir. 1999).  Defendant has failed to show that she was prejudiced by counsel's alleged inaction.

Lastly, citing a myriad of federal cases, defendant claims that counsel was constitutionally ineffective because he failed to challenge the quantity of drugs attributed to her.  While it is true that a defendant can be prejudiced due to counsel's failure to challenge the drug quantity, under the facts of defendant's case, she has not shown that counsel was constitutionally ineffective.

Defendant asserts that had counsel objected to the quantity of drugs attributed to her, her base offense level would have been 32 instead of 34. Defendant claims that holding her accountable for 226 grams of "Ice" was incorrect, and that she had reserved the right to challenge the total drug weight attributed to her at sentencing.[3] She maintains that she remembers that she only sold 141 grams of "Ice" to the Blackwells (members of the conspiracy) during five trips that they made to the Atlanta area.  Base level 34, the level attributed to the defendant, applies to offenses involving at least 1.5 kilograms but less than 5 kilograms of

---

[3]Although she may have reserved this right, counsel did not file a written objection to the drug quantity listed in the PSR.

methamphetamine or at least 150 grams but less than 500 grams of methamphetamine (actual) or "Ice."  "Ice" is defined in the guidelines as methamphetamine that is more than 80% pure.  The methamphetamine in the defendant's case was 97% pure, making it some of the purest methamphetamine ever seized in the Northern District of Florida.  (PSR ¶ 14).  Because of this, the 8 ounces, or 226 grams, of controlled substance attributed to her was classified as "Ice."  Base level 32, the level she believes should have applied, governs offenses involving at least 500 grams but less than 1.5 kilograms of methamphetamine, or at least 50 grams but less than 150 grams of methamphetamine (actual) or "Ice."

Paragraph 14 of the PSR reflects that the DEA had advised probation that the defendant distributed between 8 and 11 ounces of methamphetamine (Ice) to the Blackwells during the time frame alleged in the indictment.  The defendant was held responsible for the lesser quantity of 8 ounces, or 226 grams.  Counsel states in his affidavit that unidentified "DEA reports and other discovery documents" attributed a conservative total of 226 grams to the defendant. (Doc. 18, exh. B at 3).  He asserts that the lab reports, which defendant has appended to her reply memorandum, show a total of 175.5 grams of methamphetamine seized.  In this, counsel is mistaken.  The total cited by counsel is based on the weight of the items seized, which can include packaging, rather than the amount actually measured by the lab after analysis, which was a total of only 32.22 grams.  However, this discrepancy does not prove that defendant was involved with less than 150 grams of methamphetamine; it only disproves counsel's assertion that the labs alone put defendant over the 150 grams threshold.

In addition to the DEA evidence cited above, counsel states in his affidavit that the government was prepared to have the Blackwells testify against the defendant, and that the only way to dispute the amount attributed to the defendant would have been through her testimony.  (Doc. 18, exh. B at 4).  Defendant asserts in her submissions, and presumably would have testified, that the Blackwells only visited

her five times, purchasing a total of 5 ounces, or 141 grams of methamphetamine. She claims that they had mentioned other suppliers to her on more than one occasion. (Doc. 43 at 6). Counsel also mentioned at sentencing that he did not believe the defendant was the Blackwells' only source of methamphetamine. (Doc. 38 at 5-6). She does not mention any other witnesses or evidence that would have supported her recollection of events.

Counsel stated in his affidavit that defendant "had told the Government that she was responsible for over one hundred and fifty grams of methamphetamine," and that testifying to anything else would have been contradictory and caused her to lose credibility. (Doc. 41, exh. B at 4). The basis for the representation of what defendant "told" the government is unclear. However, even without her having "told" the government anything, contrary to the defendant's representation, there was a significant risk in challenging the quantity of "Ice" attributed to her. As noted above, the only way to present defendant's version of events would have been for her to testify. If the court found she was not a credible witness, not only would her base offense level have remained a 34, but she could have lost the benefit of the two level safety valve adjustment and/or the three level acceptance of responsibility adjustment. In addition, a finding that her testimony was not credible could have placed in jeopardy the 5K1 or Rule 35 motion she hoped to receive.[4]

Finally, the government states that even if the petitioner's drug amount was lowered to the 141 grams she admits she supplied, she could be held accountable for an additional ounce that was negotiated but not delivered, which would bring her base offense level right back to level 34. (See PSR ¶ 12). The PSR reflects that after she had agreed by phone to sell the methamphetamine to Mrs. Blackwell and an undercover DEA Agent, the defendant left her residence before the purported purchasers arrived and did not return. (PSR ¶ 12). Pursuant to Guidelines § 2D1.1, commentary application note 12, with respect to any agreed-upon quantity of drugs,

---

[4]The record reflects that she did not receive either a 5K1 or Rule 35.

"the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that the defendant did not intend to provide or purchase or was not reasonably capable of providing or purchasing." Defendant argues that she would not have been able to produce the 1 ounce quantity of drugs she had agreed to sell because she didn't have the cash to purchase it.  The court could very well have found that the defendant did intend to procure these drugs for the buyers upon proper presentation of cash.

The court finds upon consideration of the record that defendant has failed to show that "no competent counsel would have taken the action that [her] counsel did take"  *Grayson, supra*, in not challenging the quantity of methamphetamine attributed to her.  Because it would essentially have been defendant's word against that of the Blackwells, and because the possible benefit of a two level downward adjustment to defendant's base offense level had to be weighed against staying at the same offense level and potentially  losing 5 levels of adjustment, and because defendant could also have jeopardized her ability to cooperate with the government in the future, counsel's decision not to challenge the drug weights attributed to the defendant was reasonable.  There does not appear to be any evidence, other than the defendant's own statements, that would support her assertion about the quantity of methamphetamine properly attributed to her, and she has failed to show that she was prejudiced.

**Based on the foregoing, it is respectfully RECOMMENDED:**

**The motion to vacate, set aside, or correct sentence (doc. 34)  be DENIED.**

**At Pensacola, Florida, this 16th day of June, 2005.**

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**